UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | 22-CR-58 |
| MARK HENKEL, | Honorable Elaine E. Bucklo |
| Defendant. | |

**DEFENDANT MARK HENKEL'S MOTIONS IN LIMINE**

Mark Henkel, by his attorneys, Bedi & Singer, LLP, moves to exclude the following:

**I. MOTION TO EXCLUDE ANY CONDUCT OR TRANSACTIONS UNRELATED TO THE CHARGES**

In discovery, the government provided evidence and interviews alleging conduct unrelated to the charges. For example, the government provided an interview by John Brigandi that "many years ago" and "in the late 1990s," Brigandi believed Mr. Henkel was selling forged items. Brigandi claims that Mike Heffner, another seller, also thought Mr. Henkel was "selling forged items and several dealers got taken by" Mr. Henkel. Mr. Henkel requests the Court exclude all transactions or conduct unrelated to the charged mailings or wirings under 18 U.S.C. § 1341, § 1343, and Federal Rules of Evidence 401, 403, and 404(b).

First, to prove fraud, the charged mailings or wirings "must have been integrally involved in the scheme to defraud." *United States v. Cosentino*, 869 F.2d 301, 308 (7th Cir. 1989). There is no fraud unless the charged conduct is "for the purpose of executing such scheme," and the charged conduct is "causally linked to the scheme's success." *United States v. Kwiat*, 817 F.2d

1

440, 443 (7th Cir. 1987); *see also United States v. Maze*, 414 U.S. 395, 399 (1974) ("But the more difficult question is whether these mailings were sufficiently closely related to respondent's scheme to bring his conduct within the statute."). If the conduct at issue is not for the purpose of executing the charged scheme is it irrelevant, prejudicial, and inadmissible as other bad acts.

Mr. Henkel requests that the above accusations and other alleged bad acts be excluded under Rules 401, 403, and 404(b). First, Mr. Henkel requests the exclusion of any unrelated transactions or conduct under Rule 401 because they are irrelevant to the charged conduct. Brigandi's claims from "many years ago" are not integrally involved in the charges. If the transaction or conduct is unrelated or unlinked to the charged mails or wires, it has no probative value.

Second, Mr. Henkel requests the exclusion of the above allegations and any unrelated transactions under Rule 403 because they are irrelevant but extremely prejudicial. Because any transaction not "causally linked" to charged emails cannot establish wire fraud, the introduction of this evidence would only confuse the jury, waste time, and inject the case with undue prejudice. *See United States v. Savage*, 505 F.3d 754, 761 (7th Cir. 2007) ("a district court must balance the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time, and confusion of the issues under Rule 403.").

Finally, Mr. Henkel requests the exclusion of any unrelated transactions or bad acts under Rule 404(b) because it is other-crimes evidence. As stated above, the allegations are unrelated to the charged scheme, and so such allegations only act as propensity evidence. *See United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012) ("Confusion and misuse of Rule 404(b) can be avoided by asking the prosecution exactly how the proffered evidence should work in the mind of a juror

2

to establish the fact the government claims to be trying to prove."). If jurors hear the above allegations, they will not focus on the evidence presented at trial but instead find Mr. Henkel guilty because they believe he is a bad person deserving of punishment. *See Old Chief v. United States*, 519 U.S. 172, 181 (1997).

## II. MOTION TO EXCLUDE STATEMENTS FROM MR. HENKEL'S PROFFER

In April 2023, Mr. Henkel was interviewed pursuant to a proffer agreement at the United States Attorney's Office in Chicago. Mr. Henkel was represented by former counsel. The proffer agreement states: "In the event that your client is prosecuted, anything related to the government by you or your client during the proffer cannot and will not be used against your client, Mark Henkel, in the government's case-in-chief." Mr. Henkel moves to exclude any statements in relation to the proffer agreement.

## III. MOTION TO EXCLUDE UNQUALIFIED, IMPROPER, OR SPECULATIVE OPINIONS REGARDING THE AUTHENTICITY OF THE ITEMS

Throughout the discovery, there are interviews of numerous people offering their opinions as to the authenticity of the items in question. For example, in November 2019, Leslie Hindman of Hindman Auctions contacted the Federal Bureau of Investigation (FBI) and "requested the interview because she was concerned that there may be instances of high-end forgeries involving two American Artists." As part of that interview, Hindman explained that Stuart Feld of the Hirschl & Alder Gallery contacted her about certain works she sold him. Specifically, Feld told Hindman that "they did not look right," which "Hindman understood to mean that Feld believed that they were forgeries." However, Hindman herself was "not convinced that the paintings are forgeries because the provenance of the works show that they came from five separate consignors from mostly different areas of the country and do not appear

3

to be connected." Hindman suspected Feld "believed that he overpaid for the work purchased from Hindman and may be having difficulty selling it and this is potentially affecting his observations."

Mr. Henkel requests the Court exclude the government from eliciting speculative, unqualified, or improper opinions regarding the items at issue under Federal Rules of Evidence 602, 702, and 802. The government has charged Mr. Henkel with fraud, meaning the government must prove the items are fraudulent or forged, and Mr. Henkel knew the items were forged or fraudulent. Authenticating works of historical works of art and memorabilia takes a highly-qualified professional who has examined the item, understands the item's history, and can opine on the item's authenticity. The government cannot simply ask any and every witness their opinion on the items in question.

First, such an opinion would be improper under Rule 602. *See* Fed. R. Evid. 602. Rule 602 states: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *Id*. If the witness has not personally examined the item, then the witness has no personal knowledge of the item and cannot testify about the item, in violation of Rule 602.

Similarly, the government's witness cannot provide such an opinion based on another's examination, in violation of Rule 802. *See* Fed. R. Evid. 802. Rule 802 prevents the admission of hearsay. *Id*. The government cannot call witnesses who have simply spoken with art experts and then based their opinions on the expert's out-of-court conclusions.

Finally, the government cannot elicit expert opinions from its witnesses unless it complies with Rule 702. Rule 702 states that "[a] witness who is qualified as an expert by

4

knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" certain requirements are met. Mr. Henkel thus requests the Court preclude the government from eliciting expert opinions from its witnesses about the items in question unless and until the requirements of Rule 702 are met.

### IV. MOTION TO EXCLUDE GUNS OR OTHER WEAPONS FOUND DURING HOME SEARCH

In discovery, the government provided a report that guns and ammunition were found inside the home of Donald Henkel located in Cedar, Michigan. Mr. Henkel requests the exclusion of this evidence under Federal Rules of Evidence 401 and 403.

First, Mr. Henkel requests the exclusion of the alleged firearms or ammunition in his brother's home under Rule 401 because it is irrelevant to Mr. Henkel's guilt or innocence in this case. Mr. Henkel is not charged with any firearm offense. Because this evidence is unrelated to any of the charges, the government should be precluded from presenting it at trial.

Second, Mr. Henkel requests the exclusion of any evidence of firearms or ammunition under Rule 403 because it is irrelevant but extremely prejudicial. As stated above, the firearms and ammunition found in Donald's home are irrelevant, however, they are extremely prejudicial. If the jurors hear evidence that Donald kept weapons in his home, they will believe he is a dangerous person, and by association, Mr. Henkel is a dangerous person deserving of punishment. *See Old Chief*, 519 U.S. at 181; *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 178–79 (1951) ("The technique is one of guilt by association—one of the most odious institutions of history. . . Guilt under our system of government is personal."). Because any evidence of firearms is substantially outweighed by the danger of unfair prejudice, it must be excluded under Rule 403.

5

### V. MOTION TO PRECLUDE THE INDICTMENT FROM GOING BACK TO JURY

Mr. Henkel requests the Court prohibit the government from providing the indictment to the jury prior to or during deliberations. The district court's broad discretion to answer jury questions encompasses the decision of whether to give the jury a copy of the indictment. *United States v. Watts*, 29 F.3d 287, 291 (7th Cir. 1994).

Here, the Court should exercise its discretion and prohibit the government from providing a copy of the lengthy indictment to the jury for the following two reasons: (1) providing a copy of the indictment serves no purpose; and (2) providing a copy of the indictment raises an inference of guilt.

First, the Court should prohibit the government from providing a copy of the indictment to the jury because it serves no purpose. The indictment is not evidence. *Watts*, 29 F.3d at 291. It has not been tested by cross-examination, subjected to the rules of evidence, or agreed upon by the parties. The indictment includes inadmissible hearsay and inadmissible evidentiary conclusions which the jury should not consider when deciding if the government met its burden. The rules and procedures that govern the admissibility of evidence were put in place to ensure only relevant and reliable information is considered by the jury. The indictment is not subjected to these safeguards because it is not evidence, and thus not reliable or relevant to any jury consideration. Ultimately, there is no reason to provide a copy of the indictment to the jury prior to or during deliberations because they cannot consider it to determine Mr. Henkel's guilt or innocence.

6

Further, any argument that the jury needs the indictment to understand the charges is misplaced; the charges against Mr. Henkel will be read, referenced, and reviewed with the jury throughout the trial and before deliberations. Moreover, the indictment in this case provides much more than the charges. Instead, it provides a 34-page write-up of the government's theory of its case. Dkt 6. There is no need to provide the indictment to the jury for this purpose. Thus, a copy of the indictment serves no purpose other than to reiterate and emphasize the government's convoluted theory of Mr. Henkel's guilt.

Second, because the indictment has no evidential value, the jury will only use it to infer Mr. Henkel's guilt. *See United States v. Garcia*, 562 F.2d 411, 417 (7th Cir. 1977) ("[T]here is a real possibility that a charge leveled by a grand jury composed of its peers will weigh in the petit jury's balance on the side of guilt."). The jury will be uncertain how to consider the indictment during deliberations since it cannot be considered as evidence. Consequently, the jury will use the government's theory of guilt—approved by the grand jury and provided by the Court—as their starting point, opposed to Mr. Henkel's presumption of innocence. Because the indictment serves no purpose to the jury, but risks confusing or prejudicing them, a copy should not be provided.

**VI. MOTION TO SEQUESTER WITNESSES**

Mr. Henkel requests the Court order the sequestration of witnesses under Federal Rule 615. The trial court's power to control the progress of a criminal trial includes "broad power to sequester witnesses before, during, and after their testimony." *Geders v. United States*, 425 U.S. 80, 87 (1976). The practice of sequestration of witnesses has existed for centuries. *Id*. Here, Mr.

Henkel requests the sequestration of witnesses to discourage and expose any fabrication, inaccuracy, or collusion.

        Respectfully submitted,

        By: s/ Courtney L. Knippen
        Courtney L. Knippen
        Jonathan S. Bedi
        Dena M. Singer
        Bedi & Singer, LLP
        53 West Jackson Blvd
        Chicago, IL 60604
        Phone: (312) 525-2017
        dsinger@bedisinger.com
        jbedi@bedisinger.com
        **Attorneys for Defendant**

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies the foregoing document was filed via the Court's ECF system.

s/Jonathan S. Bedi<br>
Attorney for Defendant