**FILED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FEB 1 3 2025

JUDGE ELAINE E. BUCKLO
UNITED STATES DISTRICT COURT

UNITED STATES OF AMERICA

v.

MARK HENKEL

No. 22 CR 58-2

Judge Elaine E. Bucklo

## **PLEA AGREEMENT**

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant MARK HENKEL, and his attorneys, JONATHAN BEDI and DENA SINGER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### **Charges in This Case**

2.     The superseding indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Count 4); mail fraud, in violation of Title 18, United States Code, Section 1341 (Count 5); and witness tampering, in violation of Title 18, United States Code, Section 1512(b)(3) (Count 8).

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

**Charge to Which Defendant Is Pleading Guilty**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the superseding indictment: Count 4, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

**Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count 4 of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning in or around July 2005, and continuing until in or around July 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant MARK HENKEL, Donald Henkel, and other co-schemers knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money from victims, including art galleries, auction houses, and individual buyers by means of materially false and fraudulent pretenses and representations and concealment of material facts.

More specifically, from July 2005 to July 2020, defendant knowingly caused to be provided false accounts of provenance for collectible items, by concealing the

2

material fact of his and Donald Henkel's involvement with the items. Defendant did so to increase the items' value for sale and make sales of such items more likely to be completed, as defendant knew the provenance information was important to the buyer. For example, defendant recruited straw sellers to sell some of the items on Donald Henkel's behalf, knowing that Donald Henkel would direct the sellers on what to say regarding provenance, that such provenance was false and concealed material facts such as Donald Henkel's and defendant's involvement with the transaction, and that the victims would rely on such false provenance.

For example, in or around July 2005, defendant recruited Co-Schemer A for the purpose of selling at auction two baseballs purportedly signed by Honus Wagner and Christy Mathewson. Defendant put Co-Schemer A in touch with Donald Henkel, knowing Henkel would provide Co-Schemer A with false provenance that concealed Henkel's and defendant's involvement in the transaction. Defendant gave the baseballs to Co-Schemer A along with a letter written by Donald Henkel instructing Co-Schemer A to falsely represent that he had gotten the balls from his own great uncle, which Co-Schemer A did. The balls sold at auction for approximately $121,000, and Victim 5 provided Co-Schemer A with the net proceeds. Defendant directed Co-Schemer A to pay the majority of the proceeds to defendant. Defendant never received those proceeds.

In or around July 2010, defendant recruited Co-Schemer C to act as a straw seller for Donald Henkel in a transaction involving a purported Cy Young baseball

3

bat. Defendant knew that Henkel would direct Co-Schemer C to provide a false provenance that concealed Henkel's and defendant's involvement in the transaction, which Henkel did. At defendant's direction, Co-Schemer C concealed defendant's involvement in the transaction from Victim 5 and represented that the bat had come from a family member of Co-Schemer C. In reliance on the false provenance, the bat was sold as a genuine game-used Cy Young bat at auction for approximately $132,000. Co-Schemer C received $102,000 from Victim 5 and paid approximately $81,600 of that amount to Donald Henkel. Defendant never receives those proceeds.

In or around July 2015, defendant and Donald Henkel brought Co-Schemer B to a memorabilia show and directed Co-Schemer B to sell a baseball bat purportedly signed by Babe Ruth using a false provenance that concealed their involvement with the transaction, which Co-Schemer B did. Victim 5 declined to auction the bat after testing determined it was not authentic. Don Henkel later altered the bat, removing the purported Babe Ruth signature. Defendant acknowledges that in or around 2018, at Donald Henkel's instruction, Co-Schemer C sold the bat to Victim 4 using false provenance that concealed Donald Henkel and defendant's involvement with the item. The bat sold at auction for approximately $72,000. Co-Schemer C received approximately $52,680 from the sale of the bat. At Donald Henkel's direction, Co-Schemer C paid approximately $39,278 of the proceeds to Donald Henkel, who paid approximately $5,500 to defendant which defendant deposited in his account ending in 6721.

4

In or around 2012, defendant recruited Co-Schemer C to sell a baseball purportedly signed by Thurman Munson on behalf of defendant and Don Henkel. Defendant was aware Donald Henkel provided Co-Schemer C with false provenance for the ball, which Co-Schemer C provided to Victim 5, which concealed defendant's and Henkel's involvement with the transaction. The ball sold for $7,500 at auction. Co-Schemer C received a portion of the proceeds of the sale of the ball and sent the remaining proceeds to Donald Henkel.

By no later than July 7, 2020, defendant was aware of a pending grand jury investigation relating to Donald Henkel's, defendant's, and others' involvement in the sale of artwork and collectible memorabilia. On or about July 9, 2020, Co-Schemer D asked defendant during a phone call what Co-Schemer D should do with a handwritten letter that Donald Henkel had sent to Co-Schemer D containing the false provenance information Co-Schemer D was instructed to provide for the "Morning in Brooklyn" painting. Defendant responded, "I'd probably destroy it" and told Co-Schemer D to "just tell them that he told you verbally over the phone," referring to falsely telling the FBI that Donald Henkel only gave verbal instructions to Co-Schemer D over the phone. Defendant also directed Co-Schemer D to do the same for any letters that Co-Schemer D may have relating to a purported Lou Gehrig baseball bat, which Co-Schemer D had sold on behalf of defendant and Donald Henkel in or around 2015, referring to destroying any such letters referring to the baseball bat. Defendant did so in order to conceal and hinder law enforcement's recovery of

5

evidence and information relating to the nature and extent of his own and Donald Henkel's involvement with the items and sales.

Defendant acknowledges that his fraudulent conduct summarized above caused at least $332,500 in financial loss to various victims.

### Maximum Statutory Penalties

7.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

      a.     A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

      b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      c.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

8.     Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii)

6

the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2023 Guidelines Manual.

b.     **Offense Level Calculations**.

i.     The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii.     It is the government's position that, pursuant to Guideline § 2B1.1(b)(1)(H), the offense level is increased by 14 levels because the loss is greater than $550,000 and less than $1,500,000. It is defendant's position that, pursuant to Guideline § 2B1.1(b)(1)(G), the offense level is increased by 12 levels because the loss

7

is greater than $250,000 and less than $550,000. Both parties may present evidence and argument at sentencing.

   iii.  It is the government's position that, pursuant to Guideline § 3B1.1(a), the offense level is increased by 3 levels because defendant was a manager or supervisor (but not an organizer or leader) of a criminal activity that involved five or more participants or was otherwise extensive. Defendant admits the facts set forth above in paragraph 6 but reserves the right to make the legal argument that the manager or supervisor enhancement does not apply to his conduct.

   iv.  It is the government's position that, pursuant to Guideline § 3C1.1, the offense level is increased by 2 levels because defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense, and the obstructive conduct related to defendant's offense of conviction and any relevant conduct or a closely related offense. Defendant admits the facts set forth above in paragraph 6 but reserves the right to make the legal argument that the obstruction enhancement does not apply to his conduct.

   v.  If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level will be appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

        vi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        vii.    Based on the facts now known to the government, defendant does not receive any criminal history points from Chapter Four, Part A. If the Court determines that defendant meets the criteria set forth in Guideline § 4C1.1(a), the offense level would decrease by 2 levels. It is the government's position that defendant does not meet the criteria set forth in Guideline § 4C1.1(a). It is the defendant's position that he does.

        c.     **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts

now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 26, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 63 to 78 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. It is defendant's position that the anticipated offense level is 14, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 15 to 21 months' imprisonment.

      e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to victims in an amount

11

to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court.

17.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

<strong>Forfeiture</strong>

18.     Defendant understands that, by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property

constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

19.     Defendant does not object to the entry of a forfeiture judgment as to the specific property identified for forfeiture in the indictment because defendant has no ownership or other interest in that property. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

20.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

21.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture and/or abandonment carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver

13

in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 22 CR 58.

23.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

24.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

14

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

15

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.      With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.      **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

16

25.     Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

26.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

27.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17

28.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

29.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

30.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

31. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

32. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

33. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

19

34.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

35.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___2/13/26___

_____
Digitally signed by MELODY
WELLS
Date: 2026.02.06 09:34:32 -06'00'

Signed by Melody Wells on behalf of
ANDREW S. BOUTROS
United States Attorney

_____
KELLY GUZMAN
Assistant U.S. Attorney

_____
MARK HENKEL
Defendant

_____
JONATHAN BEDI
DENA SINGER
Attorney for Defendant

20